UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

KEVIN MARK DAVIS,

    Debtor.

CASE NO. 10-40111-LMK
CHAPTER 7

_____/

### PROBANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY
(Pursuant to 11 U.S.C. §362(d)(1))

Creditor, PROBANK (hereinafter "ProBank" or "Movant"), moves this Court for relief from the automatic stay pursuant to 11 U.S.C. §362(d), and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and in support thereof, states as follows:

### I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157(b)(2)(G), 11 U.S.C. §362, 11 U.S.C. §363, and 11 U.S.C. §552(b). Venue is proper pursuant to 28 U.S.C. §1408.

2.    This motion is made pursuant to Bankruptcy Rule 4001, and in conformity with Rule 9014.

### II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

3.    On February 12, 2010, the Debtor, Kevin Mark Davis (the "Debtor"), filed his voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4.    ProBank is a secured creditor of the Debtor.

**A.    $280,000.00 Loan**

5.    Pre-petition, on or about June 23, 2008, the Debtor obtained a loan from ProBank in the original principal amount of $280,000.00 ("Loan 1") evidenced by, *inter*

*alia*, a promissory note dated June 23, 2009, made by Debtor in favor of ProBank ("Note 1"), as extended. A copy of Note 1 is attached hereto as Exhibit "A".

6. On June 23, 2008, Debtor executed and delivered to ProBank a mortgage, as modified below, securing payment of the indebtedness evidenced by Note 1 ("Mortgage 1"). Mortgage 1 was recorded on July 2, 2008 in Official Records Book 3877, Page 192 of the Public Records of Leon County, Florida; and on June 26, 2008 in Official Records Book 758 Page 792 of the Public Records of Wakulla County, Florida. Amongst other things. Mortgage 1 pledged real property to ProBank ("Property 1") described therein as:

> Unit 613-E, Tallahassee Center, a condominium as per Declaration of Condominium Recorded in Official Records Book 3576, Page 2058 of the Public Records of Leon County, Florida.
>
> Lot 11, Panacea Shores Unit 2, a subdivision as per plat or on map thereof recorded in Plat Book 1, Page 32 of the Public Records of Wakulla County.

A copy of Mortgage 1 is attached hereto as Exhibit "B".

7. Mortgage 1 was modified by that certain modification of mortgage dated November 4, 2008 and recorded in Official Records Book 3922, Page 489 of the Public Records of Leon County, Florida. The modification evidenced a substitution of collateral by deleting:

> Unit 613-E, Tallahassee Center, a condominium as per Declaration of Condominium Recorded in Official Records Book 3576, Page 2058 of the Public Records of Leon County, Florida.

and adding:

> Lot 19, Block AG of Killearn Lakes 2, Leon County, Florida as recorded in Official Records Book 1576, Page 557 of the Public Records of Leon County, Florida

A copy of the modification is attached as Exhibit "C".

B.     **$408,000.00 Loan**

8.    On November 7, 2009, the Debtor obtained a loan from ProBank in the original principal amount of $408,000.00 ("Loan 2") evidenced by, *inter alia,* a promissory note dated November 7, 2008. as extended by that certain renewal promissory note dated May 15, 2009 (collectively "Note 2). A copy of Note 2 is attached as Exhibit "D".

9.    On November 7, 2008, Davis Family V, LLC (the "Mortgagor") consented to Loan 2 by executing and delivering to ProBank a mortgage securing the indebtedness evidenced by Note 2 ("Mortgage 2"). Mortgage 2 was recorded on November 14, 2008 in Official Records Book 3922, Page 781 of the Public Records of Leon County, Florida. Amongst other things, Mortgage 2 pledged real property to ProBank ("Property 2"), described therein as:

> Lots 1,2,3 & 4, Block "7", Crestview, a subdivision as per map or plat thereof recorded in Plat Book 2, Page 1, of the Public Records of Leon County, Florida.

A copy of Mortgage 2 is attached hereto as Exhibit "E".

10.    ProBank is the owner and holder of Note 1, Note 2, Mortgage 1 and Mortgage 2, as described above.

C.    **State Court Foreclosure**

11.    The Debtor defaulted on its loan payments to ProBank.

12.    On November 5, 2009, ProBank filed a state court action to foreclose its Note and Mortgage in the case styled *ProBank v. Kevin M. Davis and The Davis Family V, LLC,* pending in the Circuit Court of the Second Judicial Circuit, in Leon County, Florida; Case No. 2009-CA-4366 ("State Court Foreclosure").

13. On January 22, 2010, the Circuit Judge entered a *Stipulated Summary Final Judgment of Foreclosure* in favor of ProBank for $700,424.21, and to foreclose the Debtor's interest in the mortgaged property. A foreclosure sale for the mortgaged property was set for February 25, 2010 at 11:00 a.m. A copy of the Final Judgment is attached hereto as Exhibit "F".

14. Less than two weeks before the stipulated foreclosure sale, the Debtor filed its *Suggestion of Bankruptcy* on the State Court Foreclosure. The Debtor's intervening Chapter 7 thwarted the scheduled foreclosure sale.

### III. LEGAL ARGUMENT
#### Relief Pursuant to 11 U.S.C. §362(d)(1)

15. ProBank seeks relief from the automatic stay for cause to obtain remand of the action to the state court and complete the foreclosure of the property securing Mortgage 1 and Mortgage 2, through issuance of title.

16. Debtor has failed and is unable to furnish adequate protection of ProBank's interest in the Property.

17. Bankruptcy Code 11 U.S.C. §362(d)(1) provides, in pertinent part, that on the request of a party in interest, the court may lift the automatic stay for cause. ProBank is entitled to a relief from stay for cause based upon the fact that Debtor has sought bankruptcy protection to frustrate the efforts of ProBank in obtaining a final judgment of foreclosure and selling the Property at a foreclosure sale in the State Court Foreclosure.

18. The continuation of the automatic stay under 11 U.S.C. §362 will cause real and irreparable harm to ProBank for the following reasons:

   a. The subject Property is subject to deterioration;

b.  Interest continues to accrue upon ProBank's claim against the Debtor, without payment since default; and

c.  The Debtor is not making payments as required by the Notes and Mortgages.

19.  A copy of the Affidavit in Support of ProBank's Motion for Relief from the Automatic Stay is attached as Exhibit "G".

WHEREFORE, Movant respectfully requests this Court to grant its relief from the automatic stay to complete the foreclosure sale through issuance of title on the Property; and any further relief this Court deems just and equitable.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by either CM/ECF noticing or U.S. Mail to Attorney for Debtor: Thomas B. Woodward, Esquire, P.O. Box 10058, Tallahassee, FL 32302; Debtor: Kevin Mark Davis, Esquire, 909 Hillcrest Court, Tallahassee, FL 32308; Sherry Chancellor, Chapter 7 Trustee, 619 W. Chase Street, Pensacola, FL 32502; and to the United States Trustee, 110 E. Park Avenue, Suite 128, Tallahassee, FL 32301 this 9th day of March, 2010.

BROAD AND CASSEL
Attorneys for ProBank
390 North Orange Avenue, Ste. 1400
Orlando, Florida 32801
PO Box 4961 (32802-4961)
Phone: (407) 839-4200

By: /s/ Roy S. Kobert
Roy S. Kobert, P.A.
Florida Bar #: 777153
rkobert@broadandcassel.com

```
·DAA00540%1243061L%2135.   44%21352%0*
```

# DJUSTABLE RATE NOTE

NOTICE TO BORROWER: THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

June 23, 2008                Tallahassee                Florida
   [Date]                      [City]                   [State]

215 W College Ave., Tallahassee, FL 32301 & 48 Blue Crab Ln
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 280,000.00 ........ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ........

ProBank
PO Box 3696                              Tallahassee, FL 32315-3696

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of ..... 6.00 .......... %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(C) of this Note. Interest will be calculated on a ..... Actual 360 ......... basis.

### 3. PAYMENTS

(A) Periodic Payments
I will pay principal and interest by making periodic payments when scheduled: (mark one)
☐ I will make my periodic payments on the first day of each month beginning on ........
☒ I will make periodic payments as follows:

On The 23rd Day of Each Month Beginning On July 23, 2008

☐ In addition to the payments described above, I will pay a "Balloon Payment" of $ ........
on ........ . The Note Holder will deliver or mail to me notice prior to maturity that the Balloon Payment is due. This notice will state the Balloon Payment amount and the date that it is due.

(B) Maturity Date and Place of Payments
I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

Each periodic payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on .. June 23, 2009 ........., I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my periodic payments at ... PO Box 3696 ........
Tallahassee, FL 32315-3696 ........ or at a different place if required by the Note Holder.

Adjustable Rate Mortgage Note-FL
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

ADJ-NOTE-FL 2/16/2007
MPC101FL (0702).00
Page 1 of 5

Initials: ___


EXHIBIT A

**(C) Amount of My Initial Periodic Payments**
Each of my initial periodic payments will be in the amount of U.S. $ ..1,446.67......... . This amount may change.

**(D) Periodic Payment Changes**
Changes in my periodic payments will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my periodic payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND PERIODIC PAYMENT CHANGES

**(A) Change Dates**
Each date on which my interest rate could change is called a "Change Date." (Mark one)
☐ The interest rate I will pay may change on the first day of .................................................. and on that day every .................................... month thereafter.
☐ The interest rate I will pay may change ........................................................................ and on every .................................... thereafter.

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: ..........................
..Prime Rate As Published in the Money Rate Section of the..........................
..Wall Street Journal..........................

The most recent Index figure available as of the date ☐ 45 days ☐ .......................................... before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by ........Adding........................
...........1.00........... percentage points (One and 00/100....... %) to the Current Index. The result of this calculation:
☒ will not be rounded off.
☐ will be rounded off by the Note Holder to the nearest .................................%.
☐ will be rounded off by the Note Holder up to the nearest .................................%.
☐ will be rounded off by the Note Holder down to the nearest .................................%.

Subject to the limitations stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the periodic payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my periodic payment.

However, if I have agreed to pay a Balloon Payment in Section 3(A), then the Note Holder will determine the amount of the periodic payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments, except for my final balloon payment, which shall remain the same as it was prior to the Change Date.

**(D) Limits on Interest Rate Changes**
☐ My interest rate will never be increased or decreased on any single Change Date by more than ......N/A.............. percentage points from the rate of interest I have been paying for the preceding period.
☒ My interest rate will never be greater than .....18.00.......... % or less than ..7.00............... %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new periodic payment beginning on the first periodic payment date after the Change Date until the amount of my periodic payment changes again.

**(F) Notice of Changes**
At least 25 days, but no more than 120 days, before the effective date of any payment change, the Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my periodic payment. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Adjustable Rate Mortgage Note-FL
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

Initials:

ADJ-NOTE-FL 2/16/2007
VMPC101FL (0702).00
Page 2 of 5

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the periodic payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my periodic payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my periodic payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of my note.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any periodic payment by the end of ........15............ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ☒ ...5.000...... % of my overdue payment of principal and interest. ☐ ................................................................................

I will pay this late charge promptly but only once on each late payment.

### (B) Set-Off

I agree that the Note Holder may set off any amount due and payable under this Note against any right I have to receive money from the Note Holder. An amount due and payable under this Note is any portion of a periodic payment not paid on or before its due date, even if the due date of the Note has not been accelerated.

My right to receive money from the Note Holder includes any deposit account balance I have with the Note Holder (including savings, checking, and NOW accounts), any time deposit (including certificates of deposit), any money owed to me on an item presented to the Note Holder or in the Note Holder's possession for collection or exchange, and any repurchase agreement or other non-deposit obligation.

If my right to receive money from the Note Holder is also owned by someone who has not agreed to pay this Note, the Note Holder's right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. The Note Holder's right of set-off does not apply to an account or other obligation where my rights are only as a fiduciary. It also does not apply to any IRA account or other tax-deferred retirement account.

The Note Holder will not be liable for the dishonor of any check when the dishonor occurs because the Note Holder set off this debt against any of my accounts. I agree to hold the Note Holder harmless from any claims arising as a result of the exercise of the right of set-off.

### (C) Default

If I do not pay the full amount of each periodic payment on the date it is due, I will be in default.

### (D) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (E) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full or does not exercise the right of set-off as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Adjustable Rate Mortgage Note-FL
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

Initials: _____

ADJ-NOTE-FL 2/16/2007
VMPC101FL (0702).00
Page 3 of 5

**(F) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(B) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated June 23, 2008........, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Secured Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Adjustable Rate Mortgage Note-FL
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

Initials: _____

ADJ-NOTE-FL  2/16/2007
VMPC101FL (0702).00
Page 4 of 5

**12. BALLOON PAYMENT DISCLOSURE**
[Complete the Balloon Payment notice below if this Note provides for a Balloon Payment at Section 3(A) on page 1 of this Note.]

**13. DOCUMENTARY TAX**
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

THIS LOAN IS PAYABLE IN FULL .................................................................................................................................................................................. I MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE, WHICH MAY BE A LARGE PAYMENT. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. I WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT I MAY OWN, OR I WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER I HAVE THIS LOAN WITH, WILLING TO LEND ME THE MONEY. IF I REFINANCE THIS LOAN AT MATURITY, I MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF I OBTAIN REFINANCING FROM THE SAME LENDER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

............................................................................................................... (Seal)
Kevin M Davis                                                                               -Borrower

............................................................................................................... (Seal)
                                                                                              -Borrower

*[Sign Original Only]*

Adjustable Rate Mortgage Note-FL
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 1985, 2007

SCANNED
DATE 8 26 08

Initials: _____

ARM-NOTE-FL 2/16/2007
VMPC101FL (0702).00
Page 5 of 5

*DAA00540%1243061L%2L3528944%21352%0*
*DAA00540%1243061L%: 528. 1%21352%0*

This document was prepared by Christy Woff
..ProBank...........................................................
State of Florida's Documentary Stamp Tax required by law in
the amount of $ ..980.00.................. has been paid to the
Clerk of the Circuit Court (or the County Comptroller, if
applicable) for the County of ..Leon.&.Wakulla..............,
State of Florida.

Inst: 266348 Date:06/26/2008 Time:11:59 AM Doc
Stamp-Mtg: $980.00 Int. Tax: $560.00 VSHEPHERD
DC, Brent Thurmond, WAKULLA County
B: 758 P: 792 - 795

——— State of Florida ———   Space Above

20080046468
THIS DOCUMENT HAS BEEN
RECORDED IN THE PUBLIC RECORDS
OF
LEON COUNTY FL
BK: 3877 PG:192, Page1 of 4
07/02/2008 at 03:10 PM,
BOB INZER, CLERK OF COURTS

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .........June.23,.2008............... and the parties, their addresses and tax identification numbers, if required, are as follows:

    MORTGAGOR:    Kevin M Davis
                  6537 Heartland Circle
                  Tallahassee FL 32328

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

    LENDER:       ProBank
                  PO Box 3696
                  Tallahassee, FL 32315-3696

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

    Property 1: UNIT 613-E, TALLAHASSEE CENTER, A CONDOMINIUM AS PER
    DECLARA   TION OF CODOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 3576,
    PAGE 2058, OF  THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA.

    Property 2: LOT 11, PANACEA SHORES UNIT NO.
    2, A SUBDIVISION AS PER PLAT ORMAP THEREOF RECORDED IN PLAT BOOK1,
    PAGE 32 OF THE PUBLIC RECORDS OF WAKULLA COUNTY, FL.

    The property is located in .........Leon.&.Wakulla................................ at ........................................
                                           (County)
    .215.W.College.Ave,.48.Blue.Crab..., ......Tallahassee.&.Panacea........., Florida .......................
              (Address)                              (City)                              (ZIP Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

EXHIBIT B

future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

4. **MAXIMUM OBLIGATION LIMIT; FUTURE ADVANCES.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 280,000.00.................................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option,

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
       ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ..............................................
    ☐ **Additional Terms.**


    ☐ Payment of this note or mortgage is subject to the terms of a home improvement installment contract of even date between maker and payee or mortgagor and mortgagee.

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

.................................................... .................... ....................................................
(Signature) Kevin M Davis                    (Date)    (Signature)                                      (Date)

ProBank
NOV 19 2008

20080078968
THIS DOCUMENT HAS BEEN
RECORDED IN THE PUBLIC RECORDS
OF
LEON COUNTY FL
BK: 3922 PG:489, Page1 of 3
11/14/2008 at 10:10 AM,

BOB INZER, CLERK OF COURTS

Return to: Loan Operations, ProBank, PO Box 3696, Tallahassee, FL 32315-3696
This document was prepared by: Christy Worley, Pro Bank, PO Box 3696, Tallahassee, FL 32315
State of Florida's Documentary Stamp is not required on this Modification.

---

Space Above This Line For Recording Data

---

# MODIFICATION OF MORTGAGE

---

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is November 4, 2008. The parties and their addresses are:

**MORTGAGOR:**
KEVIN M DAVIS
6537 Heartland Circle
Tallahassee, FL 32308

**LENDER:**
PROBANK
Organized and existing under the laws of Florida
536 N. Monroe Street
Tallahassee, Florida  32301

Kevin M Davis

**1. BACKGROUND.** Mortgagor and Lender entered into a security instrument dated June 23, 2008 and recorded on July 2, 2008 (Security Instrument). The Security Instrument was recorded in the records of Leon County, Florida at
Leon County Book 3877 Pg 192
Wakulla County Book 758 Pgs 792-795 and covered the following described Property:

Property 1: Lot 19 Block AG of Killearn Lakes 2, Leon County Florida as recorded in Official Records Book 1576 Page 557 of the Public Records of Leon County, Florida

Property 2: Lot 11, Panacea Shores Unit 2, a subdivion as per plat or map thereof recorded in Plat Book 1, Page 32 of the Public Records of Wakulla County, Florida.

The property is located in Leon County at 2272 Tuscavilla Rd Leon County, FL And Lot 11 Panacea Shores- Wakulla County, , Florida .

**2. MODIFICATION.** For value received, Mortgagor and Lender agree to modify the Security Instrument as

EXHIBIT C

Blumberg No. 5119

(b) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**5. ADDITIONAL TERMS.** This is a substitution of collateral- no new money was added to this loan. All doc stamps and intangibles have been previously paid.

**6. AGREEMENT TO ARBITRATE.** Lender or Mortgagor may submit to binding arbitration any dispute, claim or other matter in question between or among Lender and Mortgagor that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as Lender and Mortgagor agree to in writing. For purposes of this section, this Transaction includes this Modification and any other document relating to the Secured Debts, and proposed loans or extensions of credit that relate to this Modification. Lender or Mortgagor will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

Lender and Mortgagor must consent to arbitrate any Dispute concerning the Secured Debt secured by real estate at the time of the proposed arbitration. Lender may foreclose or exercise any powers of sale against real property securing the Secured Debt underlying any Dispute before, during or after any arbitration. Lender may also enforce the Secured Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

Lender or Mortgagor may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to Lender or Mortgagor; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

Lender and Mortgagor acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among Lender and Mortgagor involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Modification, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Modification or another writing.

**7. WAIVER OF TRIAL FOR ARBITRATION.** Lender and Mortgagor understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, Lender and Mortgagor voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**8. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Modification knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Modification or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Modification. Mortgagor also acknowledges receipt of a copy of this Modification.

MORTGAGOR:

**LENDER:**

ProBank

By: _____/s/ Jay West_____
Jay West, Lender/Vice President

**ACKNOWLEDGMENT.**
**(Individual)**

State OF FLORIDA, County OF Leon ss.
This instrument was acknowledged before me this 4th day of Nov, 2008 by Kevin M Davis, who is personally known to me or who has produced _____ as identification.

    My commission expires:

_____
(Notary Public)

ANDREA M. OWENS
MY COMMISSION # DD 592794
EXPIRES: January 7, 2011
Bonded Thru Notary Public Underwriters

**(Lender Acknowledgment)**

State OF FL, County OF Leon ss.
This instrument was acknowledged before me this 4th day of Nov, 2008 by Jay West -- Lender/Vice President of ProBank, a corporation, on behalf of the corporation. He/she/they is/are personally known to me or has/have produced _____ as identification.

    My commission expires:

_____
(Notary Public)



CHRISTINA A. WORLEY
MY COMMISSION # DD 778613
EXPIRES: May 15, 2012
Bonded Thru Notary Public Underwriters

| LOAN NUMBER | LOAN NA... | ACCT. NUMBER | NO. ... | INITIALS |
|---|---|---|---|---|
| 1244163 | Kevin M Davis | | 05/15/09 | PJW |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $404,124.22 | Not Applicable | 7.000% | 11/07/09 | Commercial |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
(Commercial - Single Advance)
**RENEWAL NOTE**
This Note is a renewal and is exempt from taxation pursuant to Fla. Stat. 201.09.

DATE AND PARTIES. The date of this Promissory Note (Note) is May 15, 2009. The parties and their addresses are:

LENDER:
  PROBANK
  536 N Monroe Street
  Tallahassee, Florida 32301
  Telephone: 850-681-7761

BORROWER:
  KEVIN M DAVIS
  6537 Heartland Circle
  Tallahassee, FL 32308

1. DEFINITIONS. As used in this Note, the terms have the following meanings:
    A. Pronouns. The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.
    B. Note. Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.
    C. Loan. Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.
    D. Loan Documents. Loan Documents refer to all the documents executed as a part of or in connection with the Loan.
    E. Property. Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.
    F. Percent. Rates and rate change limitations are expressed as annualized percentages.

2. RENEWAL. This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| November 7, 2008 | # 1244163 | $408,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $404,124.22.

3. PROMISE TO PAY. For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $404,124.22 (Principal) plus interest from May 15, 2009 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

4. INTEREST. Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.000 percent (Interest Rate).
    A. Post-Maturity Interest. After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.
    B. Maximum Interest Amount. Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.
    C. Statutory Authority. The amount assessed or collected on this Note is authorized by the Florida usury laws under Fla. Stat. § 687.
    D. Accrual. Interest accrues using an Actual/360 days counting method.

5. ADDITIONAL CHARGES. As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

6. REMEDIAL CHARGES. In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.
    A. Late Charge. If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment. I will pay this late charge promptly but only once for each late payment.

7. GOVERNING AGREEMENT. This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

8. PURCHASE MONEY LOAN. You may include the name of the seller on the check or draft for this Note.

9. PAYMENT. I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in installments of accrued interest beginning June 7, 2009, and then on the 7th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on November 7, 2009.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and finance charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.



EXHIBIT A

(2) You may release any Borrower, endor___ ___ntor, surety, accommodation maker or any other c___

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. APPLICABLE LAW.** This Note is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**17. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**20. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**21. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**22. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**23. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**24. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**25. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**26. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_____  Date 5/15/09
Kevin M Davis
Individually

LENDER:

ProBank

## APPENDIX: FEES AND CHARGES

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid, these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Interest due through 5/15/09.** A(n) Interest due through 5/15/09 fee of $2,986.87 payable from separate funds on or before today's date.